**\*\*NOT FOR PUBLICATION\*\***

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BRANCHBURG COMMERCE PARK, LLC, | : : : : | |
| Plaintiff, | : : | Civil Action No. 15-6719 (FLW)(LHG) |
| v. | : : : | |
| HARTFORD INSURANCE COMPANY OF THE MIDWEST and HARTFORD FIRE INSURANCE COMPANY, | : : : : : | **MEMORANDUM ORDER** |
| Defendants. | : : | |

**WOLFSON, United States District Judge**:

Before the Court are the cross-motions for summary judgment of Branchburg Commerce Park, LLC, and Hartford Insurance Company of the Midwest and Hartford Fire Insurance Company, concerning Branchburg's entitlement to building coverage flood insurance under a General Property Standard Flood Insurance Policy ("SFIP"). Defendants' cross-motion contends that (1) Branchburg has no insurable interest entitling it to building coverage (also called Coverage A) under Branchburg's General Property SFIP; (2) Branchburg's policy is void due to the Branchburg's misrepresentations in its application for its General Property SFIP; and (3) Branchburg's claim is barred because Branchburg has not submitted sufficient Proof of Loss as required by the SFIP. Plaintiff's cross-motion contends that (1) Branchburg is entitled to building coverage under the SFIP after having obtained coverage "in the name of the condominium association" because the condominium association was "doing business as" Branchburg; and (2) if Branchburg is not entitled to building coverage under its existing General Property SFIP, the

1

Policy should be reformed to name the condominium association as the insured party. For the reasons set forth below, Hartford's motion is granted and Branchburg's motion is denied.

FACTUAL BACKGROUND & PROCEDURAL HISTORY

The following facts are undisputed by the parties:

1. Defendants Hartford Insurance Company of the Midwest and Hartford Fire Insurance Company (collectively "Hartford") are Write-Your-Own ("WYO") Program carriers participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act of 1968 ("NFIA").

2. Plaintiff Branchburg Commerce Park, LLC ("Branchburg"), is a limited liability company organized in or around the year 2000 and existing under the laws of the State of New Jersey. Branchburg was formed to acquire, develop, and manage the Condominium Property located at 110 Woodfern Road, Neshanic Station, NJ 08853 (the "Condominium Property"). Branchburg's Offices are located in the Condominium Property.

3. The Condominium Property is a commercial, non-residential condominium complex comprised of approximately eight free-standing buildings. The buildings on the Property are divided into thirty-six (36) separate units.

4. On or about December 3, 2003, Branchburg created the Dobie Plantation Condominium Association, Inc. ("Dobie"), which allowed individual units at the Property to be subject to sale.

5. Under Dobie's foundational document, the Master Deed, the "Condominium Association" is defined as "Dobie Plantation Condominium Association, a New Jersey not-for-profit corporation" and Developer is defined as "Branchburg Commerce Park, LLC, a New Jersey limited liability company." Art. I, Sec. 1.03; 1.10.

6. Dobie's By-Laws provide that "[t]he affairs of the Association shall be managed by a Board of Trustees. The Board of Trustees shall consist of five (5) members." Sec. 1.09(A).

7. The By-Laws go on to explain that "Notwithstanding the provisions of Section 1.09, Developer shall have the right, at Developer's option, to appoint all the officers and trustees of the Association and to direct the business of the Association (except as limited by the Master Deed and the Articles of Incorporation of the Association) for a period of time determined as hereinafter indicated . . . . This Period of the Developer's Control shall be limited, and control of this Association shall be surrendered to the Owners in the following manner: Within sixty days after conveyance to Owners, who are not Developers, of twenty-five (25%) percent of the Units, the Owners other than the Developer shall elect one (1) of the five members of the Board . . ." By-Laws, Sec. 1.05(D)(1)(a). The By-laws then provide a complete schedule gradually phasing out the Developer's control as more units are sold to non-developer owners.

8. One of the obligations of the Board under Dobie's Master Deed is that "the Board of Directors shall obtain and maintain such other insurance coverage as required by the By-Laws and in such amounts, if any, as are prescribed therein." Master Deed, Art. XI, Sec. 11.01.

9. The By-laws further state that "Subject to an in accordance with the Master Deed and By-laws, the Association shall have and perform each of the following duties for the benefit of the Members of the Association: . . . obtain and maintain in effect policies of insurance adequate, in the opinion of the Board in kind and amount." By-Laws, Sec. 1.07(E).

10. Branchburg has maintained ownership of over 75% of the Units in the Condominium Property, and therefore has always controlled all of Dobie's Board of Directors/Trustees.

11. Branchburg contends that, in its capacity controlling the Board of the Association, it determined to purchase contents and building flood insurance on one of the units in the Condominium Property, Unit A, the only unit in the Condominium Property subject to flooding. Branchburg applied to purchase insurance from Hartford through Branchburg's insurance broker proSurant, LLC. The insurance application incorrectly classified Unit A on the Policy as noncondominium, incorrectly classified the lower level as an unfinished basement, and incorrectly reported the elevation of the foundation.

12. In October 2012, Hartford, in its capacity as a WYO Program carrier, issued a Standard Flood Insurance Policy ("SFIP") to Branchburg, bearing policy number 87051023572013 (hereinafter "the Policy"), covering "Unit A" of the Condominium Property. The Policy included building coverage under Coverage A of the SFIP and contents coverage under Coverage B of the SFIP. The named insured under the Policy was Branchburg, not Dobie. The Policy had an initial term of October 29, 2012, to October 29, 2013. The Policy was renewed for a term of October 29, 2013, to October 29, 2014.

13. On or about November 26, 2013, Unit A was sold by Branchburg to Margin Holdings, Ltd., ("Margin"). No changes were made to the Policy. Immediately after the sale to Margin, Unit A was leased back to Branchburg as tenant so that Branchburg could continue to occupy its office in Unit A after the sale.

14. The Lease from Margin to Branchburg included the following requirement: "Property Insurance: Landlord and Tenant shall each maintain appropriate insurance for their respective interests in the Premises and property located on the Premises. Landlord shall

be named as an additional insured in such policies. . . . Tenant will maintain and renew from time to time Tenant's existing flood insurance policy covering the Conference Suite level of Unit A to a minimum of $100,000 building coverage."

15. On April 30, 2014, Unit A suffered flooding damage to the building and the contents therein when the Raritan River overflowed its banks.

16. On May 15, 2014, Hartford reformed the Policy to correct the Policy's classification of Unit A's lower level.

17. On June 25, 2014, Branchburg submitted an initial proof of loss for Unit A's contents and building losses. The initial proof of loss totaled $13,339.16.

18. On September 3, 2014, Hartford paid Branchburg's claim for contents damages.

19. On September 9, 2014, Hartford reformed the Policy to correct the Policy's classification of Unit A's foundation.

20. On September 9, 2014, Hartford denied the building coverage claim.

21. On October 2, 2014, Hartford returned the premium Branchburg paid for the building coverage in the Policy for no insurable interest.

22. On October 6, 2014, Hartford deleted the building coverage from the Policy. The refund notice Hartford provided stated: "Refund overpaid portion of endorsement premium remitted for flood insurance policy. DELETED 150,000 BUILDING COVERAGE DUE TO NO INSURABLE INTEREST."

23. On October 8, 2014, Branchburg submitted a supplemental proof of loss for Unit A's building damage. The supplemental proof of loss totaled $52,652.04.

24. On October 30, 2014, Hartford again denied the building coverage claim based on the supplemental proof of loss.

25. Hartford's denial notice provided: "We are denying the building portion of your claim as building coverage is not afforded to a non residential condo unit policy, pursuant to the Standard Flood Insurance Policy."

26. On November 7, 2014, Branchburg submitted an appeal of Hartford's building claim decision to Hartford and the Federal Emergency Management Agency ("FEMA").

27. On December 17, 2014, FEMA responded to Branchburg's appeal stating that FEMA's review found that further investigation of the claim was warranted, but FEMA delegated such review to Hartford.

28. On December 23, 2014, Hartford reaffirmed its previous denials of the building coverage claim.

29. On September 8, 2015, Branchburg filed the Complaint in this case, seeking a declaratory judgment of Branchburg's rights to insurance under the SFIP and for breach of contract by Hartford.

JURISDICTION

This case concerns a denial of coverage under a Standard Flood Insurance Policy issued under the Wright Your Own Program administered by FEMA. Congress has vested the United States District Courts with exclusive and original jurisdiction over federal law contract claims arising from the adjustment of polices issued under Part B (the WYO Program) of the National Flood Insurance Program. *See Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 808 (3d Cir. 2005) ("The District Court had jurisdiction pursuant to 42 U.S.C. § 4072 given that [plaintiff] sought as damages payment of United States Treasury funds from [defendant] in its capacity as a fiscal agent of FEMA pursuant to 42 U.S.C. § 4071 (2003)"); *Van Holt v. Liberty Mut. Fire Ins. Co.*, 163 F.3d 161, 167 (3d Cir. 1998) ("42 U.S.C. § 4072 vests district courts with original exclusive

jurisdiction over suits by claimants against WYO companies based on partial or total disallowance of claims for insurance arising out of the National Flood Insurance Act.").

STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

LAW & FINDINGS

1. "The SFIP is codified at 44 C.F.R. Pt. 61, App. A (2003) and is incorporated into the Code of Federal Regulations by reference at 44 C.F.R. § 61.13(a) (2003). The SFIP and all disputes arising from the handling of any claim under the policy are governed by the flood insurance regulations promulgated by FEMA, the National Flood Insurance Act of 1968, 42 U.S.C. §§ 4001–4129, and federal common law. 44 C.F.R. Pt. 61, App. A(1), Art. 11 (2000) / Art. IX (2003)." *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 807 (3d Cir. 2005).

2. "Pursuant to 42 U.S.C. § 4081(a), FEMA created the WYO program whereby Policies may be issued by private insurers . . . . Though FEMA may issue Policies directly, more than 90% are written by WYO companies. These private insurers may act as 'fiscal agents of the United States,' 42 U.S.C. § 4071(a)(1), but they are not general agents. Thus they must strictly enforce the provisions set out by FEMA and may vary the terms of a Policy only with the express written consent of the Federal Insurance Administrator. 44 C.F.R. §§ 61.4(b), 61.13(d) & (e), 62.23(c) & (d). In essence, the insurance companies serve as administrators for the federal program. It is the Government, not the companies, that pays the claims." *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 267 (3d Cir. 2004).

3. "Because any claim paid by a WYO Company is a direct charge to the United States Treasury, strict adherence to the conditions precedent to payment is required." *Suopys*, 404 F.3d at 809.

4. "WYO Companies are bound to adjust claims in accordance with the terms of the SFIP. The SFIP requires that in adjusting claims, the WYO Company apply its own company

standards guided by NFIP Claims manuals issued by FEMA. 44 C.F.R. § 62.23(i)(1) (2003)." *Suopys,* 404 F.3d at 807. *See also Torre v. Liberty Mut. Fire Ins. Co.*, 781 F.3d 651, 654 n. 5 (3d Cir. 2015) (FEMA's Flood Adjuster's Claims Manual is incorporated by reference into FEMA regulations).

5. "'It is well settled that federal common law governs the interpretation of the SFIP at issue here.' Thus, '[w]e utilize standard insurance law principles to construe the SFIP.' 'Under these principles, we interpret the SFIP in accordance with its plain, unambiguous meaning.' If the SFIP is ambiguous and reasonably 'susceptible to two constructions, however, we will adopt the one more favorable to the insured.'" *Torre*, 781 F.3d at 653 (quoting *Linder & Assocs. v. Aetna Cas. & Sur. Co.,* 166 F.3d 547, 550 (3d Cir. 1999)).

6. Judgment in favor of the defendant is appropriate, however, if after "[h]aving applied these principles, it is clear that [defendant's] interpretation . . . is the only reasonable one when viewed in light of the SFIP as a whole." *Torre*, 781 F.3d at 653. This is because, in interpreting SFIPs, courts must always give effect to the "[c]lear policy language," and refrain from "tortur[ing] the language to create ambiguities." *Selko v. Home Ins. Co.,* 139 F.3d 146, 152 n. 3 (3d Cir. 1998).

7. In briefing and at argument, Plaintiff's main theory of liability was that Branchburg legally qualifies under the SFIP to obtain insurance "in the name of the condominium association" because, under Dobie's foundational documents, the Margin-Branchburg lease agreement, and Branchburg's foundational documents, Branchburg was legally obligated to obtain insurance for Dobie, and therefore Dobie was "doing business as" Branchburg. Plaintiff failed to cite any legal authority in support of its "doing business as" theory.

9

8. "Condominium Association" is defined under the General Property form of the SFIP as:

   The entity, formed by the unit owners, responsible for the maintenance and operation of:
   a. Common elements owned in undivided shares by unit owners; and
   b. Other real property in which the unit owners have use rights where membership in the entity is a required condition of unit ownership."
   SFIP II(B)(9).

9. It is undisputed in this case that the insured property, Unit A, is a non-residential condominium.

10. The National Flood Insurance Program Claim Manual provides for two types of coverage for non-residential condominiums, of which Plaintiff only invoked one as the basis for coverage in this case.

11. NFIP Manual, Condominiums, Sec. 6(I)(C), provides:

    Non-residential (commercial) condominium buildings and their commonly owned contents may be insured in the name of the association under the General Property Form. The "non-residential" limits apply.

12. The policy at issue in this case names only Branchburg as the named insured. Plaintiff therefore contends that it successfully obtained building coverage "in the name of the association" because the aforementioned internal Dobie, Branchburg, and Margin documents charged Branchburg with the responsibility to obtain insurance for Dobie, such that Dobie was "doing business as" Branchburg.

13. The Court rejects Plaintiff's argument because:

    a. Section II(B)(9) of Branchburg's General Property SFIP clearly and unambiguously states that a "Condominium Association" is "[t]he entity, *formed by the unit owners*, responsible for the maintenance and operation of . . . [c]ommon elements owned in undivided shares by unit owners." (emphasis added). The only entity formed by unit owners in this case is Dobie. Branchburg

    is, according to Plaintiff's own documents, the developer, a unit owner (though not of the insured unit, which was owned by Margin), and therefore a member of the condominium association, Dobie. By-laws Sec. 1.01; Master Deed Art. I. Sec. 1.12. It is impossible for Branchburg both to be the condominium association and a member of the same association.

b. New Jersey State Law recognizes the distinct status of condominium associations and imposes obligations for their legal structure and composition. From the foundational documents in the record, only Dobie, organized as a non-profit condominium association/organization purports to comply with these New Jersey State laws. *See, e.g.*, N.J. Stat. § 46:8B-12. Branchburg, a developer organized as a for-profit LLC, does not.

c. The Master Deed indicates that Dobie is the condominium association owning the building containing Unit A. Per the Master Deed, a "Condominium Association" "[s]hall mean and refer to Dobie Plantation Condominium Association, a New Jersey not-for-profit corporation, formed to administer, manage and operate the common affairs of the Unit Owners of the Condominium and to maintain, repair and replace the General and Limited Common Elements of the Condominium as provided in this Master Deed and the By-Laws of the Condominium Association." Master Deed Art. I. Sec. 1.10.

d. The Master Deed anticipates that there will be enforceable contracts between Branchburg, as the developer, and Dobie as the Condominium Association. Master Deed Art. XIV Sec. 14.01. This provision would be meaningless and

      unnecessary if Dobie in fact was "doing business as" Branchburg as one and the same entity.

e. Samuel Ornstein, the President of both Dobie and Branchburg testified in his deposition that Dobie and Branchburg were "two separate entities" that kept separate bank accounts, and filed non-consolidated tax returns independently of one another. Ornstein Dep. T77:20-23; T83:14-18.

f. Further, at oral argument, the Court heard from counsel for Branchburg admitted that Branchburg and Dobie were legally separate entities and argued only that because Branchburg was acting on behalf of Dobie it was "doing business as Dobie." Counsel did not provide any legal authority supporting this position, and did not object to Counsel for Hartford's representation that "doing business as" is a legal term of art governed by New Jersey statutes.

g. During a prior bankruptcy proceeding, Branchburg named Dobie as an unsecured creditor. *See* January 4, 2013 Petition, *In re: Branchburg Commerce Park LLC*, No. 13-10187 (Bankr. D.N.J. 2013) (Defendants' Exhibit P).

h. The SFIP policy application form completed by Branchburg has separate blank spaces allotted for the named insured and the procurer of the insurance, removing any possibility for confusion.

i. Accordingly, it is unambiguous that under the General Property SFIP a condominium association is the "the entity, *formed by the unit owners*, responsible for the maintenance and operation of common elements." Branchburg is the owner of 80% of the Condominium Property's units, the developer, and a member of the association. It by definition, was not "the entity, formed by the unit

owners." All of the evidence in the record supports that that entity was Dobie. To the extent that Branchburg was delegated authority to acquire insurance by Dobie, the true condominium association, that delegation does not affect Branchburg's eligibility for insurance under the SFIP.

14. Branchburg disclaimed any estoppel argument during the hearing. In any event, while courts "apply standard insurance principles to construe the SFIP, general doctrines of waiver and estoppel do not apply when the insurer is an agent of the United States." *Suopys v. Omaha Prop. & Cas.*, 404 F.3d 805, 809 (3d Cir. 2005). *See also Residences at Bay Point Condo. Ass'n, Inc. v. Standard Fire Ins. Co.*, No. CIV.A. 13-02380 FLW, 2013 WL 6252692, at *11 (D.N.J. Dec. 4, 2013).

15. Branchburg's claim for reformation fails, because, as the portion of the Manual governing reformation of SFIPs provides:

    When coverage is issued using an incorrect SFIP form, the policy is void and the coverage must be written under the correct form. The provisions of the correct SFIP form apply. The coverage limits must be reformed according to the provisions of the correct SFIP form and cannot exceed the coverage limits originally issued under the incorrect policy.
    NFIP Manual, General Rules, Sec. 3(IX)(D).

16. At the hearing, Branchburg admitted that the SFIP coverage in this case was not written onto the incorrect form. Here, because the General Property form used in the policy issued to Branchburg would be the same form used to issue a policy to the "correct" insured Dobie, there is no basis under the SFIP for a reformation to change the named insured.

17. Further, Branchburg provided no legal authority in support of its reformation claim and the court would be extremely hesitant to reform an SFIP to change the parties to the

contract in the absence of some authority explicitly granting it the power to award such extraordinary equitable relief.

18. The Court declines to reach Hartfrd's additional bases for summary judgment, that Branchburg's policy was void due to false statements, or not actionable due to the inadequacy of Branchburg's proof of loss.

CONCLUSION

Accordingly, the undisputed material facts establish that Hartford is entitled to summary judgment. As the condominium association responsible for Unit A, Dobie was the only entity in whose name building coverage under the General Property form of the SFIP could be issued for Unit A. Branchburg, an entity legally separate and distinct from Dobie, was tasked by contractual obligation with procuring insurance for Dobie, but failed to do so. The policy for which Branchburg applied, and the policy that therefore was issued by Hartford, was issued in the name of Branchburg only. Although Hartford's application form clearly delineated between the entity *procuring* insurance and the entity *insured*, Branchburg named itself as both procurer and insured, mentioning Dobie nowhere in the policy. Because, under the unambiguous terms of the SFIP, which must be strictly construed by this Court, only the condominium association, in this case Dobie, has an insurable interest in building coverage, Branchburg, as the developer of Unit A, and merely a member of association, does not have such an insurable interest and is not entitled to building coverage as a matter of law. Branchburg's motion is therefore denied, and Hartford's motion is granted.

    **SO ORDERED.**

Dated: _____2/08/2017_____            _____/s/ Freda L. Wolfson_____
                                                                                The Honorable Freda L. Wolfson
                                                                                United States District Judge